**IN THE COURT OF APPEALS OF IOWA**

No. 19-0799
Filed July 24, 2019

**IN THE INTEREST OF R.S.,**
**Minor Child,**

**J.F., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Fremont County, Eric J. Nelson,

District Associate Judge.


        A mother appeals from the termination of her parental rights.  **AFFIRMED.**


        Vicki R. Danley, Sidney, for appellant mother.

        Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

        Katherine Murphy of Kate Murphy Law, PLC, Glenwood, for appellee father.

        Jaclyn Tackett of Tackett Law Offices, Glenwood, guardian ad litem for

minor child.


        Considered by Vaitheswaran, P.J., and Potterfield and Greer, JJ.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to her child, R.S., under Iowa Code section 232.116(1)(f) (2019). On appeal, the mother argues: (1) termination is not required because the child was in the father's care, (2) termination is not in the child's best interests, (3) the Iowa Department of Human Services (DHS) failed to provide appropriate services, and (4) the exception in Iowa Code section 232.116(3)(a) should apply since the father has legal custody. On our de novo review and for the reasons explained below, we affirm the juvenile court's termination of the mother's parental rights.

## I. Background Facts and Proceedings.

The mother appeals the termination of her parental rights to R.S., born January 2014. Prior to involvement by DHS, R.S.'s mother and father lived separately and had joint legal custody and shared physical care of R.S.

On November 16, 2017, DHS received a report of unsafe conditions in the home R.S. shared with the mother and the mother's paramour. The report indicated that the mother and the paramour appeared to be significantly impaired by unknown substances, the home was dirty, there was moldy food on the floor, and the furnace pilot light was open to access by three-year-old R.S. R.S. was removed from the mother's care that day and placed with his father and stepmother. The next day, a DHS worker reported the mother admitted to recently abusing her prescriptions for Xanax and Adderall and using marijuana and methamphetamine.

On December 4, 2017, R.S. underwent a hair stat test, which was positive for methamphetamine. The mother was charged with and later pled guilty to child

endangerment related to her care of R.S., and she was sentenced to probation. On December 11, 2018, the mother was arrested for violation of her earlier probation, and she remained in jail at the time of the termination hearing.

According to a report from DHS, the mother admitted to using methamphetamine—while sometimes also abusing Xanax—in February, March, August, and December 2018. Since R.S.'s removal, the mother has successfully completed mental-health and substance-abuse evaluations, unsuccessfully attempted outpatient treatment, successfully completed inpatient and halfway treatment, and again unsuccessfully attempted outpatient treatment. At the time of the termination hearing, the mother was incarcerated but hoped to participate in a drug court program, which requires treatment in inpatient, halfway, and outpatient settings over eighteen to twenty-four months.

The State petitioned to terminate the mother's parental rights, which proceeded to a hearing on February 27, 2019.[1] On April 29, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) and ordered the child remain in the father's care.

**II. Standard of Review.**

We review termination proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We examine both the facts and law, and we adjudicate anew

---

[1] The father participated in the termination proceeding through counsel, asserting the court should terminate the mother's parental rights. On appeal, he filed a response to the mother's petition, which advocated for affirming the termination of her parental rights. The State joined the father's response.

those issues properly preserved and presented." *In re C.S.*, No. 13–1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014).

### III. Analysis.

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 39–40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* at 40. Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should preclude the termination of parental rights. *See id.*

We begin the analysis with the first issue raised. The mother argues the termination petition should never have been filed and should have been dismissed because R.S. was safe in the father's care. She notes the county attorney is not required to file a termination petition "when the child is being cared for by a relative." Iowa Code § 232.111(2)(b)(1). This code provision requires the county attorney to file a termination petition when certain circumstances occur. *See id.* § 232.111(2)(a). Even when these circumstances do not occur, the county attorney and other parties have the discretion to file a termination petition. *See id.* § 232.111(1). As explained below, termination may be appropriate even when the child is in the care of a relative. Therefore, placing R.S. in the care of his father does not prevent the State from filing a petition to terminate the mother's parental rights. As for grounds for termination in this case, the juvenile court considered

the guidelines of Iowa Code section 232.116(1)(f), which was appropriate under the clear and convincing evidence presented and detailed below.

Second, the mother argues termination is not in R.S.'s best interests. In determining the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). R.S. was initially removed from the mother's care on November 16, 2017, due in part to her substance abuse. R.S. then tested positive for methamphetamine. Despite treatment, DHS reported the mother admitted using drugs on four separate occasions throughout 2018, and she acknowledged these relapses during the hearing. In her petition on appeal, she refers to herself as "an addict" and "admits at this point in her life, she needs long term help, R.S. cannot be in her care for 18 to 24 months, and it is best for R.S. to be with" the father. While the mother asserts she is no longer in a relationship with her paramour, the juvenile court explicitly did not base termination on the paramour's possible involvement, finding "it is [the mother's] decision-making regarding drug use that places [R.S.] at risk of future harm." We agree.

The mother had more than fifteen months between removal and termination to address her substance-abuse issues. Despite completing some treatment, she made little progress in this time. She admittedly continues to relapse and has repeatedly failed to maintain sobriety in an independent setting. R.S. is at a tender age and cannot wait an additional eighteen to twenty-four months to see if the mother will be able to provide a safe home. *See P.L.,* 778 N.W.2d at 41 ("[W]e cannot deprive a child of permanency after the State has proved a ground for

termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). Because the mother's long-standing substance-abuse issues continue to prevent her from safely caring for R.S., termination of her parental rights is in R.S.'s best interests.

Third, the mother challenges the adequacy of the services DHS offered. DHS "has the obligation to provide reasonable reunification services," but the mother "had the obligation to demand other, different or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). The mother did not assert the services provided were unreasonable prior to termination. Therefore, the reasonableness of the services is not preserved for our review. *See id.* While she did not preserve the issue, we note DHS offered drug screens; evaluations and follow-up services for substance abuse and mental health; family team meetings; parent partner; and various Family Safety, Risk, and Permanency services.

Fourth, the mother argues termination is not appropriate because R.S. was already placed with the father. "Once we have established that the termination of parental rights is in the child['s] best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *M.W.*, 876 N.W.2d at 225. The mother addresses one such exception. The court need not terminate parental rights if "[a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). This is a permissive, not mandatory, factor for the court to continue parental rights. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The father testified he could not protect R.S. if the mother continued to exercise her parental rights. As explained above, she

continues to struggle with substance abuse and termination is in R.S.'s best interests. Accordingly, we find placement with the father does not preclude termination.

### IV. Conclusion

Because filing a termination petition was permissible while R.S. remained in the father's care and termination is in R.S.'s best interests, we affirm the termination of the mother's parental rights.

**AFFIRMED.**